08CV1841
United States I JUDGE LEINENWEBER
Northern Dist
Eastern Di MAG. JUDGE BROWN

RECEIVED
MAR 31, 2008
Mar 31, 2008
MICHAEL W. DOBBINS
CLERK, U S DISTRICT COURT

Caroline P. More ("CPM")
v.        Case No.
1.    Lipkin and Higgins Law Firm, 2. Mr. Peter Higgins, 3. Mr. M. Lipkin 4. David Novoselsky Assocs. 5. Mr. David Novoselsky, 6. Robert Black Law Firm, 7. Mr. Robert Black, 8. Circuit Court of Cook County ("CCCC"), IL Judge T. Flanagan, 9. Judge of the Illinois Appellate Court First District ("IACFD") Fitzgerald, 10. Judge IACFD J. Mc Nulty, 11. Judge IADFC D. O'Malley 12. Hofman LaRoche Pharmacuetical Co. Inc., 13. Sidley Austin Law Firm, 14. Steven Beyer, 15. Elizabeth Curtin, 16. Richard Jett, 17. Sarah Lyke, 18. Vandhala Balasubramian,– Attorneys for Sidley Austin Law Firm, 19. Dr. Marilyn McKay – Expert Witness for the Defendants, 20. Dr. Thomas Herriges M.D., 21. Hinshaw Culbertson Law Firm, 22. Mr. Kevin Burke, 23. Mr. Thomas Mulroy, 24. Ms. Serena Pollack, 25. Justin or Joshua Vincent, Attorneys for, Hinshaw Culbertson Law Firm, 24. John Cashion Law Firm, 25. Mr. John Cashion, 26. Donahue, Brown, Mathewson, Smith Law Firm, 27. Attorney Donald Brown, 28. Attorney Charles Harper, 30. CCCC Judge Joseph Casciato, 31. IACFD Judge Sheila O'Brien, 32. Judge M. Frousard, 33. Judge M. Gallagher, 33. State of Illinois, 34. United States of America
Defendant(s),

COMPLAINT AT LAW OF 3/31/08

Introduction

This Complaint, filed on the third anniversary of a date that will live in infamy – the date upon which Teresa Schiavo's incredibly cruel and excruciatingly painful ordeal in subjection to what constituted a government perpetrated torture and murder, (as had there been no government interference in the matter, her torturers and murderers could not have succeeded in so afflicting her, without having to overcome whatever force would have been utilized to rescue her - the government defeating such type agenda, as it so appallingly did in such matter by confronting the leaders of the then intended rescuers individually before they could get congregated) that invoking federal court diversity jurisdiction, has been composed and submitted according to the barest minimum notice pleading standard operative in federal courts for cases involving more than $75,000.00 in damages, in which the Plaintiff's domicile is in a state in which none of the Defendants listed in a given case are domiciled, which originated out of the filing of a medical malpractice/product liability lawsuit in the CCCC in August of 1993, in which the Attorney filing the lawsuit culpably neglected to file a count for battery against a most deep-pocketed individual whose battery of CPM resulted in the first injury to her, which eventually led to each and every one of the subsequent injuries which are a subject of the case this complaint concerns ("this case").

This case has a long and complex procedural history, a considerably more complete explication of which will be provided this Court and the Defendants by the time which such Defendants would be served process in this case, Providence willing. It is the intention of CPM to voluntarily dismiss this case with automatic leave to refile, within one year of the date of the issuance of an order voluntarily dismissing the case, pursuant to the provisions of 735 ILCS 5/13-217, as soon as each and all of the Defendants have been served process in this case.

An application for appointment of counsel will be filed with this Court shortly. Most if not all of the Defendants named in this case have been on notice for a considerable period of time that a complaint naming them as Defendants was to be filed shortly, and proposals have been presented to such persons and/or entities. Not a single one has provided any response to any of the notifications provided, nor to any of the proposals contained therein. On 3/28/08, an assistant to CPM spoke to Sidley Austin Attorney Co-defendant E. Curtin for about 74 seconds, but before a proposal could be made that CPM be permitted to access the trial transcripts created in the underlying case, or whether any of the Sidley related Defendants would object to CPM's assistant being permitted to take the trial court record in the underlying case out for 3/29 and 3/30/08, so as to be capable of completing this complaint, the line went dead and no return phone call was received. Hinshaw Culbertson, Co-defendant Mr. K. Burke received a voice mail on 3/28/08 regarding several interrelated matters concerning this case but neither CPM nor her assistant has received any response from Mr. Burke as of 3/31/08. As no stipulation could be procured tolling whatever statute of limitations someone might endeavor to claim began to run on 4/1/2006, CPM considered it the only safe course to file this complaint on 3/1/08. Thus a challenge will be made to the constitutionality as applied of the F.R. of Civ. Proc. Restricting to twenty days the number of days from the filing of a complaint, the time within which a plaintiff can file an amended complaint without leave of the court. One of the biggest problems with this complaint is that there was no access to either the transcripts of the trial court proceedings, nor any audio-tape made in regard thereto in order to complete it. Indeed, had CPM and/or her assistant had access to either an audio recording of the proceedings or the transcripts referenced supra, this complaint would have been plead on the fact pleading standard applicable in Illinois Courts and filed in the

1

Circuit Court of Cook County, IL. It should come as no surprise to anyone, that not a single Defendant named in this case, has ever even returned a single phone call, nor email of CPM's assistant, other than one returned by Mr. Higgins in early 2004 endeavoring to excuse his commitment to keep his activity in the prosecution of the trial in this case unmonitored to the extent he could accomplish such objective. St. John addressed the matter in the third chapter of the Gospel he authored as follows: "The light has come into the world, yet men loved the darkness rather than the light, for their works were evil. For everyone who does evil hates the light, and does not come to the light, that his deeds may not be exposed. " (Jn. 3:19). It is the understanding of CPM's assistant that the problems which have necessitated the filing of this complaint, at the enormous burden the prosecution thereof imposes upon everyone concerned is the phenomena which Solzenhitzyn referred to as the "tilt towards evil". There is not a Defendant named in this case, whose activity in regard thereto has to the extent an assessment has thus far been conducted in regard thereto, been conducted according to what can be identified to constitute a minimally acceptable standard of accountability. On the contrary, the obviously unjustified priorities of those named as Defendants in this case and the activity that such unjustified priorities has spawned has necessitated the filing of this complaint and there is no reason to believe that the priorities of any of the such Defendants are any less corrupt now than they were at the various junctures at which activity emanating proximately therefrom has resulted in evidently unjustified injuries to CPM and all of those entitled to consideration of various sorts and measures from her. There are a number of exhibits which CPM intends to file as soon as permission is granted for her to efile in this case, so that the structure within which this case would have to be prosecuted so that this case does not misfire or otherwise miscarry, if the various Defendants named herein do not make an acceptable settlement offer before expensive litigation would have to be commenced would not remain not superimposed into the adjudication of this case. As the United States Supreme Court explained in Montana v U.S (_U.S._)., (paraphrase) Res judicata cannot be applied as a defense if the structure that would have had to have been present in the adjudication of a case in order for a result derivative therefrom to possess legitimacy in the case in regard to which the defense would be posited was not present and provided. The Second Restatement of Judgments articulates this same uncontestable proposition – in effect – no legitimacy, no finality. This is (excepting Divine intervention or the prophesized return of His Majesty, Jesus Christ the King (Mt. 25:26 et al, Quas Primas, Pope Pius XI, 1924) obviously the only non-vigilante and non-military legitimate approach to the problem of the rectification of miscarriages of justice/restoration of a minimally acceptably accountable legal system demonstrably not incompatible with the U.S. Constitution's Thirteenth Amendment prohibition on slavery and numerous other provisions thereof.
It is hoped that the Defendants named herein will not simply conduct activity according to the pernicious, predatory and indeed, barbaric and cannibalistic ordinary and customary standard according to which the activity of all but whatever atypical attorneys and judges are still conducting activity in this area at this juncture in the Country's continued descent into an ever deeper barbarity, is conducted, but since the past track record of each and all, leaves no justified hope that this will be the case, this entire case will have to be prosecuted according to a "prevention of a worst case scenario" standard.
Since CPM's assistant intends to file a petition to file an amicus curiae brief or a number thereof in this case, or to be permitted to represent CPM on a Third Party Plaintiff Standard or to be called as a Court's Witness in this case, this contextualizing and prefacing will herein be truncated so that CPM can get the bare minimum of legal conclusions necessary to satisfy the liberal notice pleading requirements of the Fed. Rules of Civ. Proc. Included herein, under the constraint of not possessing access to the record of the trial court testimony, to ensure that it would not be both the case that this complaint, subject to liberal provision for amendment thereto would not be minimally acceptable as presented herein and that if it could be claimed that it were, that such condition might justifiably be attributed to some culpable negligence imputable to CPM.
It goes without saying that the law cannot compel the impossible and what is herein presented subject to future amendment, as soon as CPM can procure access to the audio recording and/or transcripts of the trial conducted in this case, is as much as CPM could now accomplish.
CPM could have waited to file this case and challenged the constitutionality of any statute of limitations which any Defendant might, howsoever unjustifiably have endeavored to invoke in a limitations defense, but in whatever circumstances, will proceed as best she now can at present.
In any case, at a given juncture, what is contained herein will be left in whatever condition it would be found to be at a designated juncture, subject to amendment and expansion in the future.
At present the prevailing situation with the Doctor and Pharmacuetical Company, the Defendant's Attorneys and the rest of the Defendants, in one way or another either in possession of an entirely undeserved windfall or having gotten away "scot-free" while the public has to subsidize CPM's upkeep and medical condition is entirely

2

unacceptable. The issue of what ought be done with any punitive damages which would be recovered from the prosecution of this case, so that no one would end up with any windfall from the adjudication of this case, will be addressed in the future.

NOW COMES Plaintiff, Caroline P. More (CPM") and complaining of the Defendants, [Defendant's #1 through 31 as listed in the caption of this complaint] and states as follows:
GENERAL ALLEGATIONS AS TO ALL COUNTS
The Parties
1. CPM, Plaintiff, is a resident of the State of Wisconsin and at the relevant times
set forth in this Complaint ("such times"), was a resident of the State of Illinois.
2. Defendants #'s 1. (#1.) Liptack and Higgins Law Firm, with # 2. Mr. Peter Higgins, #3. Mr. M. Liptak, as its Partners was at such times a law firm conducting activity in the State of IL, specializing in plaintiff's personal injury law, whose Partners decided to represent CPM in a medical malpractice/product liability case ("the underlying case" "UC") in July of 2003,
3. Defendant # 4. Novoselsky Assocs. was at such times a law firm established in the State of IL., specializing in civil appeals with #5. Mr. David Novoselsky as its Director who decided in the Summer of 2004 to represent CPM in the filing of a post trial motion, after a not guilty verdict had been issued in the trial conducted in the UC in March of 2004 and after judgment had been entered for the Defendants in such case.
4. Defendant , #6. Robert Black Law Firm, wirh #7. Mr. Robert Black, as its Director is a State of IL Law Firm which represented CPM in the appeal of the UC in 2005 and 2006.
5. Defendant # 8. Circuit Court of Cook County ("CCCC"), IL Judge T. Flanagan, presided over the trial and the adjudication of the post-trial motion in the UC.
6. Defendant's # 9. Judge of the Illinois Appellate Court First District ("IACFD") Fitzgerald, 10. Judge IACFD J. Mc Nulty, 11. Judge IADFC D. O'Malley were the Appellate Court Judge who issued an order on 3/31/06, affirming the judgment of the Trial Court in the UC.
7. Defendant # 12. Hofman LaRoche Pharmacuetical Co. Inc. ("Hofman") , was and is a Corporation domiciled in Nutley, N.J. which marketed a drug called Efudex in the early 1990's, which when administered to CPM in an off label contest, by Dr. T. Herriges resulted in her being burned to such degree as to have been disabled with severe to sometimes excruciating pain.
8. . Defendant #13. Sidley Austin Law Firm ("SALF"), which employed Defendant's # 14. Steven Beyer, # 15. Elizabeth Curtin, # 16. Richard Jett, # 7. Sarah Lyke, # 18. Vandhala Balasubramian, as Attorneys for the SALF, Chicago, IL Office represented Hofman in all phases of the UC.
9. . Defendant #19. Dr. Marilyn McKay – conducted activity as an Expert Witness for the Defendants in the UC.
10. . Defendant # 20. Dr. Thomas Herriges M.D. was and is a Chicago, IL area obstetrician/gynecologist who applied Efudex to CPM in the early 1990's in an off label manner resulting in severe and excruciatingly painful and disabling burns to CPM .
11. . Defendant # 21. Hinshaw Culbertson Law Firm, was and is a Chicago, IL based law firm, which represented Dr. Herrige in the UC and . Defendant's # 22. Mr. Kevin Burke, # 23. Mr. Thomas Mulroy, # 24. Ms. Serena Pollack, and # 25. Justin or Joshua Vincent, were Attorneys for, Hinshaw Culbertson Law Firm who participated in the defense of the UC.
12. Defendant # 24. John Cashion Law Firm, was and is a Chicago, IL based law firm directed by Mr. John Cashion, and Mr. Cashion was the attorney who first filed the UC in 1993 and voluntarily dismissed it in 1999.
13. Defendant # 26. Donahue, Brown, Mathewson, Smith Law Firm was and is a Chicago, IL based law firm which represented Mr. Cashion and his law firm in Case #02L-2237 which was defended by Defendants # 27. Attorney Donald Brown, and # 28Attorney Charles Harper, in the Cook County Circuit Court resulting in the dismissal of the case in March of 2003.
14. Defendant # 28. CCCC Judge Joseph Casciato is the Judge who dismissed Case #02L-2237 on 3/27/03.
15. Defendants # 29. IACFD Judge Sheila O'Brien, 30. Judge M. Frousard, 31. Judge M. Gallagher are the three Judges who dismissed the appeal filed in Case #02L-2237.
16. Defendant State of Illinois is sued for not providing a republican form of government as guaranteed in Article V.I of the U.S. Constitution, in that there is not a minimally adequately functional court system in which disputes can be resolved and injustices rectified such that the legitimate interests at stake in court cases do not remain not adequately accommodated.
17. The United States is sued herein for the same reasons enumerated in #16 supra.

18. Since each of the Defendants listed herein supra either possesses a copy of the complaint in regard to the conducting of activity in regard thereto, which has resulted in its, his or her being named as a Defendant in this case, or ready access to such complaint(s), no copies of such have been filed with this complaint in the first instance (complaint filed on 6/1/2000 in case # 00L-6285.

19. Defendants Hofman LaRoche and Dr. Herriges are being sued for all of the reasons and according to all of the facts postulated in the complaint filed in the UC on 6/1/2000 which was Case # 00L-6285 in the CCCC and for the malefactions and torts committed by them and the Legal Representatives and Expert Witnesses who conducted activity on behalf of one or the other, or jointly in the defense of Case #00L-6285 and its appeal.

Count I – Legal Malpractice, Legal Malpractice, Breach of Fiduciary Duty, Fraud, Violation of the Consumer Fraud and Deceptive Business Practices Act

20. Complaint is made that Defendants 1. Liptak and Higgins Law Firm, 2. Mr. Peter Higgins, and 3. Mr. M. Liptak, at all times relative to this complaint, owed CPM a duty of care to conduct their activity according to a minimally acceptable standard of accountability, which included but was not limited to the duty to 1.) do what was necessary to prevent the Defendants from effectively preventing them from discharging their burdens of proof and persuasion in the various counts listed in the complaint filed on 6/1/00 as Case No. 00L-6285 ("00L 6285") via the presentation of motions in limine and objections at trial which would if granted and/or sustained, respectively, effectively prevent the convincing of a jury that none of the elements which had to be proved in the counts listed in such complaint for CPM to prevail were not present in the evidence presented at trial in the case to a measure of the preponderance of the evidence, 2. ) adequately present and preserve any and all federal issues which would be present and/or arise in the proceedings due to the method and standard according to which the proceedings in the case would be conducted, 3.) remember that CPM was in a position as a disabled person, ignorant of the law and incapable of either affording such entities as trial court transcripts – which are not necessary given that an audio-recording device could be used to create a record of the trial conducted in the case or knowing how to procure an appellate attorney who would not defraud her, as both D's Novoselsky and Black obviously did, and to ensure that such issues indispensable to any appeal that might have to be filed in such case, 4.) prevent the Defense from succeeding in convincing the jury that notwithstanding that numerous treating physicians who would be subject to liability for prescribing remedies based upon inaccurate and inadequate diagnoses, had when treating CPM after she was first injured, prescribed CPM forms of treatment and therapy entirely incompatible with any claim that CPM either was not truly experiencing disabling and sometimes, excruciating pain and that the changes in her life since the time of her injury rendered her as either deserving to be considered a consummate actress or needing and deserving of compensation for the condition in which such injuries had left her, via the presentation of a junk science claim such as that which the snake oil saleswoman Dr. Marilyn McKay posited that the pain was psychologically caused, without McKay's ever having to demonstrate the compatibility of such claim with the evidence described herein supra, 5) do what was necessary to ensure that the jury would not be left concluding that the trial conducted in the UC was not the most important temporal matter in her life.

21. Complaint is herein made that such Defendants breached such duty of care in among other ways neglecting to do what was necessary to demonstrate how patently malicious were several of the motions in limine which were granted for the Defense in this case, the non-positing of any objection articulating even a single federal question/issue despite the several obviously present in this case from the effects created by the activity of the Defense and the Court in this case – to be continued

22. The duty breaches perpetrated by Liptak and Higgins proximately caused as at least one contributing cause the loss of this case in its first trial and the loss of the first appeal filed in regard thereto.

23. CPM was damaged in that she is no better off after the trial, appellate affirmation, etc. than she was before it – she is still without the relief for which she filed the suit in the first place.

WHEREFORE, Plaintiff prays for judgment in [her] favor and against the Defendants listed herein supra for a sum in excess of $75,000.00 plus whatever punitive damages a jury would see fit to award her.
Respectfully submitted,
Caroline P. More

Count II – Legal Malpractice, Breach of Fiduciary Duty, Fraud, Violation of the Consumer Fraud and Deceptive Business Practices Act

24. Defendant 4. David Novoselsky Assocs. 5. Mr. David Novoselsky, in endeavoring to induce the payment of $7500.00 in order to compensate him for the preparation of a post trial motion in the UC, owed both CPM and her father and mother Wilson R. and T. B. More a duty of care to inform them as to exactly what was going to be provided to them for the $7500.00 that Mr. W. R. More sent him on 8/24/04 and what was not going to be provided to them for such sum in the posttrial motion he would and did file, what the consequences would be on appeal in regard to every issue that could have been presented in a

4

post-trial motion but which was not presented by him in such motion, whether he was even going to read the trial court record before filing a post-trial motion and examine the trial court audio recording and/or transcripts before presenting a post trial motion which would limit on appeal the issues which the appellate court would consider, solely to those presented in the postrial motion filed in the case and to otherwise do all that it would be within his power to do, to both explain to CPM and Mrs. W.R. More the consequences of procuring his services for the post trial motion and to salvage CPM's case or to inform them that they ought to seek legal representation from some other source.

25. These Defendants breached such duty in that the only issue presented in the post trial motion was the granting of the motion in limine prohibiting CPM from kneeling or standing in the courtroom during the trial, the presentation was a half-baked, token effort and such D's cooperated with the Defense and the Court to keep CPM's brother from communicating with the Court and derailing the miscarriage of justice which occurred in the trial of the UC.
26. Such duty breach proximately caused the loss of the appeal filed in this case.
27. CPM was injured in that the appeal was lost.

WHEREFORE, Plaintiff prays for judgment in [her] favor and against the Defendants listed herein supra for a sum in excess of $75,000.00 plus whatever punitive damages a jury would see fit to award her.
Respectfully submitted,
Caroline P. More

Count III Legal Malpractice, Breach of Fiduciary Duty, Fraud, Violation of the Consumer Fraud and Deceptive Business Practices Act

28. Defendants #6. Robert Black Law Firm, and 7. Mr. Robert Black, at all times owed CPM a duty of care to file a non-token appellate brief for the estimated $8000.00 CPM allegedly paid him to represent her on appeal in the UC and to get each and every issue which would have had to have been adequately presented on appeal addressed in the appeal adjudication in the UC.
29. Black filed an appellate brief in the appeal filed in the UC which this complaint concerns which was replete with unintelligible constructions and in which the constitutionality of the application of C.C.P. Rule 5/1202 to CPM's case was never challenged.
30. The brief was otherwise of absolutely no value as Black could not even overcome the frivolous position put forward by the Defendants in such appeal as to why they were justified in keeping CPM from remaining in the courtroom for her trial unless she would comply with a standard of conduct which it was her position would have rendered it impossible for her to remain in the courtroom
31. No errata was ever filed to bring the unintelligible constructions with which the brief was replete to a minimally acceptable level and Black, instead of accepting suggestions from CPM's brother ("RJM") regarding the possible means via which to salvage the case on appeal, employed various pretexts to keep his activity out of RJM's purview and went further by calumniating RJM to the Court.
32. The deplorable level at which the brief filed was filed, without correction and all that was left undone constituted a duty breach imputable to Black.
33. Such duty breach proximately caused the loss of the appeal in the UC.
34. CPM was damaged in that the appeal was lost.

WHEREFORE, Plaintiff prays for judgment in [her] favor and against the Defendants listed herein supra for a sum in excess of $75,000.00 plus whatever punitive damages a jury would see fit to award her.
Respectfully submitted,
Caroline P. More

Count for Legal Malpractice, Breach of Fiduciary Duty, Abuse of Process Against John B. Cashion, Donahue, Brown, Mathewson, Smith Law Firm, Attorney Donald Brown, Attorney Charles Harper, Defamation Against Cashion

Attorney John B. Cashion ("JBC") became aware that a considerably wealthy Chicago Attorney had committed a battery against CPM within two years of the perpetration of such battery back in the early 1990's at the time at which he was associating with CPM in an attorney-client relationship.
When JBC became aware that this tort had been committed, he neglected to explain to CPM that such battery was actionable and also neglected to inform CPM that he was subject to a conflict of interest in that the Law Firm for which the batterer worked and in which he was a partner was one of the chief sources of case referrals for JBC.
At all times, JBC was obliged to inform clients and prospective clients of any conflicts of interests which might encumber or impede the attorney client relationship and prevent him from demonstrating an adequate concern for the legitimate interests of a client.

5

JBC breached such duty of care in that he never informed CPM of the conflict of interest which caused him to not file a claim for battery against one of the most wealthy persons in Chicago.

Such duty breach proximately caused CPM to not get a battery charge filed against the person who transmitted the affliction which caused her to seek medical treatment which ultimately resulted in the medical malpractice/product liability case this case concerns.

CPM was damaged in that she lost the battery claim against the batterer.

CPM filed a lawsuit in 2002 against JBC to recover for such unjustified injury causing duty breach and to recover for the defamatory statements which JBC made to among other attorneys, Mr. A. Salvi, which CPM understood caused Mr. Salvi and others to decide against representing her in the med mal/products liability case.

Donald Brown and Charles Harper filed the type of vacuous and malicious motion to dismiss ("MTD") which is customarily filed in cases adjudicated in this period of America's descent into barbarity.

Judge J. Casciato transgressed several provisions of the Rules of Civil Procedure, Constitutional Law and most importantly the requirements of the moral law in granting the unmeritorious MTD.

When CPM appeared on a status hearing on 2/26/03 in order to prepare to file a motion to reconsider and amend her complaint, the status hearing was without any notice transformed into a hearing on the motion to amend and to reconsider in gross contravention of CPM's and the public's right to due process of law, equal protection of the law and the right to petition the government for the redress of grievances and the motions to amend the complaint and reconsider were denied.

When Attorney Brown realized that all of the dots were not connected to create the appearance of legitimacy in regard to what had happened, he simply conveniently recharacterized the developments of the day and Judge Casciato conveniently signed the amended order Brown presented.

Thus JBC, DBMS, Brown and Harper and Judge Casciato owed CPM and the public duties of care to conduct activity in court proceedings according to legitimate standards, standards which would not be incompatible with anyone's legitimate reliance interest.

Such duties were breached as described supra.

The duty breaches proximately caused the dismissal of CPM's meritorious claims

CPM was injured by such losses.

There was a defamation claim also present in the complaint filed in such case, which Judge Casciato informed CPM could be brought after her medical malpractice/products liability case was resolved and thus it is herein claimed that JBC made materially false and inaccurate statements about CPM, to third parties, which caused persons such as Al Salvi to not take CPM's case.

WHEREFORE, Plaintiff prays for judgment in [her] favor and against the Defendants listed herein supra for a sum in excess of $75,000.00 plus whatever punitive damages a jury would see fit to award her.

Respectfully submitted,

Caroline P. More

Count – Negligence/Recklessness-Wantonness and/or Fraud

All of the Defendants included herein infra are accused of having conducted activity in positions of public trust at too low a standard of accountability for such activity respectively to have possessed or possess any legitimacy. Since all such persons and parties are licensed professionals, who are presumed to understand the compliance accomplishment threshold according to which they were obliged to conduct their activity, respectively in a given instance, in the matters this count concerns, the accusation contained herein, it is CPM's position, suffices for purposes of satisfying the liberal notice pleading requirements operative in federal court cases, until this complaint can be modified. In particular the testimony of Dr. Marilyn McKay was one of the most egregious examples of a professional betraying the public trust in the pursuit of filthy lucre that even the heavily stained halls of the Cook County Circuit Court have seen in some time. Dr. McKay must have her medical license revoked besides having to pay a monetary penalty in this case.

8. Circuit Court of Cook County ("CCCC") , IL Judge T. Flanagan, 9. Judge of the Illinois Appellate Court First District ("IACFD") Fitzgerald, 10. Judge IACFD J. Mc Nulty, 11. Judge IADFC D. O'Malley

12. Hofman LaRoche Pharmacuetical Co. Inc., 13. Sidley Austin Law Firm, 14. Steven Beyer, 15. Elizabeth Curtin, 16. Richard Jett, 17. Sarah Lyke, 18. Vandhala Balasubramian,– Attorneys for Sidley Austin Law Firm, 19. Dr. Marilyn McKay – Expert Witness for the Defendants, 20. Dr. Thomas Herriges M.D., 21. Hinshaw Culbertson Law Firm, 22. Mr. Kevin Burke, 23. Mr. Thomas Mulroy, 24. Ms. Serena Pollack, 25. Justin _____, Attorneys for, Hinshaw Culbertson Law Firm,

WHEREFORE, Plaintiff prays for judgment in [her] favor and against the Defendants listed supra for a sum in excess of $75,000.00 plus whatever punitive damages a jury would see fit to award her on this count..

Respectfully submitted,

Caroline P. More

6

I aver to the veracity of all factual averments contained herein.

Plaintiff demands trial by jury

_Caroline P. More_  _3/31/08_
Caroline P. More          3/31/08

Caroline P. More
10148 Sharp Road, Mount Horeb, WI 53572
Cell: 312-543-5446